# EXHIBIT  A

11/9/2021 12:45:41 PM PST (GMT-8) FROM: 7867473104 TO: 16178687244          Page: 3 of 28

Filing # 137395743 E-Filed 10/27/2021 03:15:52 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>(a) GENERAL FORMS | **CASE NUMBER**<br>2021-023915-CA-01 |
| **PLAINTIFF(S)**<br>SOFFER HEART INSTITUTE, P.A. | **VS.  DEFENDANT(S)**<br>CYNOSURE, INC. | **SERVICE** |

A TRUE COPY ATTEST

DEPUTY SHERIFF
Middlesex County

11/15/2021
DATE OF SERVICE

CLOCK IN

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): Cynosure, Inc., 5 Carlisle Road, Westford, MA 01886

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Alan G. Geffin, Esq. and Christopher Perez-Gurri, Esq.

whose address is: GPG Law, 1326 SE 3RD Avenue, Fort Lauderdale, FL 33322

within 20 days " <u>Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.</u>" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **HARVEY RUVIN**<br>**CLERK of COURTS** | 217043<br><br>DEPUTY CLERK | | **DATE**<br>10/28/2021 |
|---|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314 Rev. 09/19                                                    Clerk's web address: www.miami-dadeclerk.com

Filing # 137329590 E-Filed 10/26/2021 06:41:54 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I. CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u> JUDICIAL CIRCUIT, IN AND FOR <u>MIAMI-DADE</u> COUNTY, FLORIDA

<u>Soffer Heart Institute, P.A.</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>Cynosure, Inc.</u>
Defendant

### II. AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III. TYPE OF CASE (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☒ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.  REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.  NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   <u>4</u>

**VI.  IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.  HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.  IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Christopher Perez-Gurri</u>        Fla. Bar # <u>31405</u>
      Attorney or party                         (Bar # if attorney)

<u>Christopher Perez-Gurri</u>              <u>10/26/2021</u>
  (type or print name)           Date

Filing # 137401826 E-Filed 10/27/2021 03:52:33 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION
CASE NO.: 2021-023915-CA-01

SOFFER HEART INSTITUTE, P.A., a Florida corporation,

      Plaintiff,

v.

CYNOSURE, INC., a Delaware corporation,

      Defendant.

_____/

## AMENDED COMPLAINT

    Plaintiff, Soffer Heart Institute, a Florida corporation ("SHI"), sues Defendant, Cynosure, Inc., a Delaware corporation, and alleges:

### Parties and Jurisdiction

1.    SHI is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

2.    SHI, under the guidance and leadership of its founder, Dr. Ariel Soffer, specializes in a variety of diagnostic testing and treatments for cardiovascular conditions. SHI is leading the way in exemplary vein care.

3.    Cynosure is a Delware corporation. Cynosure is in the business of developing and manufacturing a diverse range of treatment applications for hair removal, skin revitalization, scar reduction, etc. Cynosure's products, principally, use laser technology. They are sold to physicians and aesthetic business owners.

4.    Pertinent to this action, Cynosure sold to SHI an ICON Intense Pulsed Light system and accessories ("IPL").

5.      Cynosure is subject to the jurisdiction of this court because it is engaged in a substantial and not isolated activity within the state of Florida and, in particular, within the court's jurisdiction. Cynosure engages in and carries on a business or a business venture within the state of Florida and, in particular, within the court's jurisdiction. Cynosure is committing, or has committed, tortious acts within the state of Florida and, in particular, within the court's jurisdiction

6.      This is an action for damages that exceed $30,000 exclusive of interest, costs and attorney's fees.

7.      All conditions precedent to the institution of this action have occurred, have been performed, or have otherwise been waived or excused.

### General Allegations Common To All Counts:

### The Purchase Agreement

8.      On or about December 20, 2019, representatives of Cynosure visited SHI's offices in Aventura Florida. At such time, Cynosure's agents, Kyle Shapero and Mike Russo, proposed the sale of an IPL to SHI.

9.      The Cynosure representatives advised SHI, through Dr Soffer, that the cost of the IPL was $160,000.

10.     Dr Soffer endeavored to negotiate a lower price.

11.     Among other things, Dr. Soffer explained that SHI could and would pay one lump sum for the IPL if Cynosure could offer the equipment at a more attractive price.

12.     Negotiations between the parties continued.

13.     Eventually, SHI entered into a Purchase Agreement pursuant to which SHI acquired an IPL system and accessories from Cynosure, Inc. A true and correct a copy of the purchase agreement

*Soffer Heart Institute, P.A. v. Cynosure, Inc.*
Amended Complaint

is appended hereto as Exhibit A. The agreed-upon purchase price was $140,000. Noteworthy, that

sum included a cash rebate of $20,000.

14.     SHI acknowledges that such $20,000 rebate was paid on or about January 23, 2020.

### Cynosure's Misrepresentations

15.     Although SHI agreed to pay one lump sum for the IPL, at Cynosure's recommendation and

insistence, SHI agreed to *finance* the purchase pursuant to the terms of an Equipment Finance

Agreement ("EFA") with MMP Capital.

16.     In order to induce SHI to finance the acquisition, Cynosure's representatives affirmatively

stated:

a.      Prepayment Penalty - Cynosure's agents affirmatively represented that SHI could

prepay the loan without penalty. Indeed, your agent represented to SHI and Dr.

Soffer that Cynosure frequently permits customers with Dr Soffer's credit-

worthiness to prepay loans, without penalty.

b.      Brokerage/Commission Fee – Without SHI's knowledge or consent, Cynosure

added a brokerage commission of $14,920.23 to the principal of the financed sum.

Worse yet, Cynosure buried this commission in an effort to defraud our clients.

Remarkably, the commission exceeds 10% of the principal loan amount.

c.      Interest Rate of 8.75% - Cynosure's agents affirmatively represented that SHI's

interest rate would be competitive with available credit lines to which Dr. Soffer

had access. This was not the case.

d.      Deferred Interest was Capitalized - Cynosure's agents affirmatively represented

that our clients would not have to pay anything except $99 per month for the first

6 months. In actuality, Cynosure's co-conspirator, MMP Capital, capitalized the

interest that was not paid during the first 6 months and added it to the principal. This was never disclosed.

### The EFA

17.     In reliance upon Cynosure's representations, SHI did, in fact, execute an EFA with MMP Capital, the company that Cynosure had recommended. A true and correct a copy of the Equipment Finance Agreement is appended hereto as Exhibit B.

18.     But for Cynosure's actions and representations, SHI would not have financed the acquisition of the IPL system and its accessories.

19.     In addition to its affirmative representations, Cynosure FAILED to disclose or explain various other charges adding up to approximately $450.00.

20.     In reliance upon Cynosure's agent's affirmative representations, Dr. Soffer personally guaranteed the EFA.

21.     On or about January 22, 2020, the EFA was assigned to Crestmark Vendor Finance, SHI's current creditor.

### The Fraud Is Discovered

22.     After execution of the EFA, SHI discovered that a commission had been surreptitiously "built in" to the EFA ("Commission"). However, Cynosure failed to disclose the Commission charge to SHI and it never agreed to pay same. Specifically, broker invoice number 201911.13004 reflects a demand for the Commission in the amount of $14,920.23. Noteworthy, the item and description on such invoice reflects "Commission" and "Soffer Heart Institute, P. A.," respectively. A true and correct copy of the broker invoice is appended hereto as Exhibit C.

23.     Thereafter, Plaintiff discovered a second document. That document is the amortization schedule provided to Dr. Ariel Soffer in connection with SHI's purchase and finance of the IPL

*Soffer Heart Institute, P.A. v. Cynosure, Inc.*
Amended Complaint

system. The second line item identified in such amortization schedule increases SHI's balance owed by $14,920.23. A true and correct copy of the amortization schedule is appended hereto as Exhibit D.

## Count I - FDUPTA

24.     This is an action for damages pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") brought by SHI against Cynosure.

25.     SHI re-alleges and incorporates by reference paragraphs 1 – 23 as if more fully set forth herein.

26.     Cynosure, through its misrepresentations and conduct, engaged in unfair or deceptive acts or practices in the conduct of trade or commerce. Pursuant to FDUTPA, such acts and practices are unlawful.

27.     SHI was in the market to acquire an intense pulsed light system and, therefore, SHI and Soffer are consumers as defined by FDUTPA.

28.     SHI has suffered losses as a result of Cynosure's violation of FDUTPA.

29.     Cynosure had actual knowledge of the wrongfulness of its conduct and the high probability that SHI would be injured, or damaged, as a result of such conduct. Despite having such knowledge, Cynosure intentionally pursued that course of conduct and thereby injured or damaged SHI.

30.     As a direct, proximate, and foreseeable result of Cynosure's violation of FDUTPA, SHI has been damaged.

31.     As a direct, proximate, and foreseeable result of Cynosure's violation of FDUTPA, SHI and Soffer have been required to engage the services of undersigned counsel and has agreed to pay said counsel a reasonable fee for such services.

WHEREFORE, SHI respectfully requests that this Court enter a final judgment in its favor finding that Cynosure is liable for violating FDUTPA and awarding SHI all damages, interest, attorney's fees, costs, and such other relief that this Court deems just and proper.

## Count II – Fraud in the Inducement

32.     This is an action for fraud in the inducement brought by SHI against Cynosure.

33.     SHI re-alleges and incorporates by reference paragraphs 1 – 23 as if more fully set forth herein.

34.     Cynosure knew, or should have known, that the above-alleged representations it made to SHI were false.

35.     Cynosure intended that SHI rely upon those representations and act upon them.

36.     SHI reasonably relied upon those representations when it entered into the EFA.

37.     As a direct, proximate, and foreseeable result of Cynosure fraudulently inducing SHI to enter into the EFA, SHI has been damaged.

WHEREFORE, SHI respectfully requests that this Court enter a final judgment in its favor finding that Cynosure is liable for fraud in the inducement and awarding SHI all damages, interest, attorney's fees, costs, and such other relief that this Court deems just and proper.

## Count III – Aiding and Abetting Fraud

38.     This is an action for aiding and abetting a fraud brought by SHI against Cynosure.

39.     SHI re-alleges and incorporates by reference paragraphs 1 – 23 as if more fully set forth herein.

40.     MMP Capital and Cynosure engaged in a fraud to charge the Commission to SHI.  For example, neither MMP Capital or Cynosure disclosed the existence of the Commission to SHI or

*Soffer Heart Institute, P.A. v. Cynosure, Inc.*
Amended Complaint

that it would be responsible to pay the Commission. Indeed, at all material times, MMP Capital and Cynosure represented to SHI that the purchase price did not include any commission.

41.     MMP Capital and Cynosure knew that such representations were false when they were made.

42.     MMP Capital and Cynosure intended that SHI rely upon the subject representations. SHI did, in fact, rely upon those representations and enter into the EFA. Thereafter, SHI discovered that the Commission had been hidden in the amortization schedule provided by MMP Capital.

43.     As a direct, proximate, and foreseeable result of the foregoing described fraud, SHI has been damaged.

44.     Cynosure had knowledge of the foregoing described fraud and provided substantial assistance to advance the fraud.

WHEREFORE, SHI respectfully requests that this Court enter a final judgment in its favor finding that Cynosure is liable for aiding and abetting a fraud and awarding SHI all damages, interest, attorney's fees, costs, and such other relief that this Court deems just and proper.

## Count VI – Negligence

45.     This is an action for negligence brought by SHI against Cynosure.

46.     SHI re-alleges and incorporates by reference paragraphs 1 – 23 as if more fully set forth herein.

47.     Cynosure owes SHI a duty of care because Cynosure voluntarily made representations to SHI regarding the EFA. Indeed, by making the above-alleged representations, Cynosure created a foreseeable risk that SHI would rely upon them and be injured by such reliance.

48.     Cynosure breached its duty of care to SHI by misrepresenting the terms of EFA and charging SHI for undisclosed charges.

*Soffer Heart Institute, P.A. v. Cynosure, Inc.*
Amended Complaint

49.     Due to Cynosure's breach of the duty of care that it owed to SHI, SHI has suffered

damages.

WHEREFORE, SHI respectfully requests that this Court enter a final judgment in its favor finding

that Cynosure is liable for negligence and awarding SHI all damages, interest, costs, and such other

relief that this Court deems just and proper.

### **Demand for Jury Trial**

SHI demands a trial by jury of all issues so triable.

### **Demand for Attorney's Fees**

SHI demands an award of attorney's fees pursuant to any and all contractual or statutory provisions.

Dated: October 27, 2021

**GPG Law**
1326 SE 3rd Avenue
Ft. Lauderdale, FL. 33316
Telephone: (954) 533-5530
Facsimile: (954) 374-6588
Primary:     gpgservice@gpglawfirm.com
Secondary: chris@gpglawfirm.com;
                  alan@gpglawfirm.com

*s/Alan G. Geffin*
Alan G. Geffin
Florida Bar No. 780006
Christopher Perez-Gurri
Florida Bar No. 31405

# EXHIBIT A

# CYNOSURE

An Hologic Company

5 Carlisle Rd, Westford, MA 01886
Telephone: 978-256-4200  Fax: 978-349-7443

## Customer Purchase Agreement

Date: **12-20-19**

### CUSTOMER INFORMATION

Customer Name: **Ariel Soffer MD**

Ultimate Ship To:

Contact Person:

Address: **21550 Biscayne Blvd. Suite 133**

City/State/Zip: **Aventura FL 33180**

Telephone/Fax: **305-792-0555**

Telephone/Fax:

| GOODS & SERVICES | QTY | Unit Price € USD | Total Price € USD |
|---|---|---|---|
| **ICON™ INTENSE PULSED LIGHT (IPL) SYSTEM** Optimized Pulsed Light (OPL) System. Complete with on-site installation & clinical in-service, and one (1) year equipment warranty. System includes: • 1 each Icon Base Module, Heat Exchanger Module, Chiller Module and Cart • 1 each Starter Kit, Power Cord and Boom • 1 Freight | 1 | $225,500 | $225,500 |
| **SKINTEL® Melanin Reader** | 1 | | |
| **IPL HANDPIECE OPTIONS:** | | | |
| Max R™ IPL Handpiece - Red | 1 | | |
| Max G™ IPL Handpiece - Green with treatment adapter | 1 | | |
| MaxYs™ IPL Handpiece - Yellow Super with treatment adapter | 1 | | |
| **LASER & SPECIALTY HANDPIECE OPTIONS:** 1540 Fractional Laser Handpiece, Non-Ablative with XF™ & XD™ microlenses | 1 | | |
| **Marketing Package:** Printed and electronic marketing material support including: product brochures, print-ready files, web and media files, before and after photos. | 1 | | $ 140,000 |

open box unit
patient pop Included
marketing rebate 20,000      − 20,000

Icon™ system sold with multiple IPL's and at least one Laser or Specialty Hand pieces will include 2 consecutive days of clinical in-service

Quoted Price Valid for 30 days from above date. Prices do not include sales, duty or excise taxes, including medical device taxes which are the responsibility of the Customer to pay and will be billed separately.

$ 120,000

~~$225,500~~

Shipping Incl. ~~part 500~~

### ACCEPTANCE OF AGREEMENT

By signing below, the Customer (i) is representing to Cynosure, Inc. ("Cynosure") that it has the requisite corporate authority to execute and deliver this Customer Purchase Agreement ("Agreement") and has the required licensing from the applicable state medical review board to operate the Product purchased by this Agreement, and (ii) is entering into a binding agreement for the purchase of the Product and/or services described above and accepts all of the terms and conditions as stated in this document (including the following page(s)). This Agreement is subject to Cynosure's terms and conditions of sale contained or referred to herein and the Customer expressly disclaims any additional and/or different terms and conditions or any terms and conditions on the Customer's purchase order. Federal law restricts the sale of the products to a licensed practitioner.

Customer Signature (Authorized Representative)    **12-20-19**
Date

Cynosure Area Sales Manager Signature   **Judith Lin**    **12-20-19**
Date

Delivery Date:

934-SM03-004, Rev. E

# EXHIBIT B

**MMP** CAPITAL

EQUIPMENT FINANCE AGREEMENT

EFA No.: 201911.13004   Date: 12/20/2019

## EQUIPMENT ACCEPTANCE CERTIFICATE

| Customer Name | Customer Number | Transaction Number |
|---|---|---|
| SOFFER HEART INSTITUTE, P.A. | | |

This certificate (the **Acceptance Certificate**) is entered into by the undersigned **Customer** (also **you** or **your**) in favor of **MMP Capital Inc** (also **we**, **us** and **our**) in connection with the EFA, Lease, and/or other financing agreement identified by the Transaction Number above (the **Agreement**). Any defined term not otherwise described herein shall have the same meaning ascribed to it in the Agreement or the other documents related thereto.

> As of the Acceptance Date set forth below, you hereby confirm that (i) the equipment listed in the attached Schedule A (the **Equipment**) has been delivered to you, installed, and/or is operating as intended, (ii) you unconditionally and irrevocably accept such Equipment and (iii) you understand and agree to be responsible for, perform and comply with, all of the obligations, terms and conditions of the Agreement and related documents.

In connection with your acceptance of the Equipment, you acknowledge and agree to the following:

1. You selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE; you shall look only to the vendor/supplier of the Equipment (the **Vendor**) or manufacturer (not us) for any claim concerning the Equipment, which shall not relieve you from any obligations to us, including any payment obligations; and YOU HEREBY WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR ANY, CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES.

2. You selected any software included on and/or within the Equipment (collectively, the **Software**); you assume all liability related to any unauthorized access or use of the Software and any data collected, stored, used or accessed by the Equipment and/or Software (the **Data**); we do not own or license any Software or Data; and we have no duty to configure, maintain and/or otherwise safeguard the Software and/or Data.

3. Neither the Vendor nor any of its salespersons or other agents are agents of ours or are authorized to waive or modify any term or condition of this Acceptance Agreement, the Agreement and/or related documents. Any representation as to the Equipment or any other matter made by the Vendor shall not in any way affect your duty to make payments to us and perform all your other obligations as set forth in the Agreement or the other documents related thereto.

**Execution.** This document may be signed via digitally generated signatures and all signatures so generated, as well as those transmitted by facsimile, email, digital photography or other electronic means, shall for all purposes be deemed effective, binding, legally admissible and have the same effect as a manually applied ink signature.

**CUSTOMER:**   SOFFER HEART INSTITUTE, P.A.

▬▬▬▬▬   12/20/19 , 20____

**ACCEPTED BY:**
▬▬▬▬
**Printed Name:**   Ariel Soffer
**Title:**   President



EQUIPMENT FINANCE AGREEMENT

EFA No.: __201911.13004__   Date: __12/20/2019__

By signing below, Debtor hereby irrevocably accepts the Collateral under the EFA and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this EFA is authorized to do so, making this EFA the valid binding act of the Debtor.

| Debtor: SOFFER HEART INSTITUTE, P.A. | Accepted by MMP Capital Inc |
|---|---|
| By: | By: |
| Print Name: Ariel Soffer | Print Name: JOHN-PAUL SMOLENSKI |
| Title: President   Date: 12-2019 | Title: PRESIDENT   Date: |
| Debtor Tax ID: 26-3867908 | |

**GUARANTY:** In consideration of Creditor entering into the EFA, the undersigned, together and separately, unconditionally, personally and irrevocably guarantee to Creditor the prompt payment and performance of all Debtor's obligations under the EFA. You agree that this is a guaranty of payment, not collection, and that Creditor can proceed directly against you without first proceeding against Creditor or the Collateral. You waive notice of acceptance, acceleration and default and all defenses, including protest, presentment and demand. Creditor may renew, extend or otherwise change the terms of the EFA without notice to you and you will be bound by such changes, and you will pay all of Creditor's costs of enforcement and collection, including reasonable attorneys' fees. This Guaranty is binding on your heirs, administrators, representatives, successors and assigns and survives the insolvency, bankruptcy or discharge from bankruptcy of Debtor. THIS GUARANTY WILL BE GOVERNED BY NEW YORK LAW. YOU AGREE TO JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS AS SET FORTH IN THE EFA.

| Guarantor's Signature: | Print Name: Ariel Soffer | Date: 12-20-19 |
|---|---|---|
| Guarantor's Signature: | Print Name: | Date: |

**AUTHORIZATION FOR ACH PAYMENTS:** Debtor hereby authorizes and requests MMP CAPITAL INC ("Creditor"), and/or its successors or assigns, to initiate electronic debit entries or effect a change by any other commercially accepted practice, to the account indicated below, and hereby authorize the named below financial institution ("Bank") to honor the debit entries initiated by Creditor or its assignee and debit the same to such account. This authorization is to remain in full force and effect until such time that Creditor has received written notification from Debtor of its termination in such time and in such manner as to afford Creditor and the Bank a reasonable opportunity to act on same. Debtor understands that the withdrawal of this authorization without the written consent of Creditor shall constitute default of the Equipment Finance Agreement for which this payment is being made.

| Debtor Bank Name: | | Bank Phone #: (   ) | | |
|---|---|---|---|---|
| Address: | | City: | State: | Zip: |
| Name on Account: | | ABA #: | Bank Account #: | |
| By: | Print Name: Ariel Soffer | | Title: President | Date: |

**PLEASE COMPLETE THE BELOW STATEMENT OF AUTHORITY IF APPLICABLE.**

**CORPORATE OR LIMITED LIABILITY COMPANY STATEMENT OF AUTHORITY**

This Statement of Authority is executed pursuant to the Business Corporations Act or Limited Liability Company Act (as the case may be) of the state of ____FL____
Regarding _____SOFFER HEART INSTITUTE, P.A._____ (the "Company").

The following persons are the Directors or Officers of the Company or Members, Managers or Officers of the Company (as the case may be) and have full power and authority to act on behalf of the Company and execute all instruments on behalf of the Company and to any contract, including, but not limited to, this Equipment Finance Agreement.

| Print Name | Title | Signature |
|---|---|---|
| Ariel Soffer | President | |

The authority of the foregoing persons to bind the Company is not limited.

Executed this __20__ day of __December__, 20__19__

| By: | Print Name: Ariel Soffer | Title: President |
|---|---|---|

11/9/2021 2:45:41 PM (GMT-5) FROM: 7984413164 TO: 18175981241 Page 20 of 31


MMP CAPITAL

EQUIPMENT FINANCE AGREEMENT

EFA No.: 201911.13004    Date: 12/20/2019

| Creditor ("we," "us" and "our"): MMP Capital | Debtor ("you" or "your"): |
|---|---|
| 19 Engineers Lane | SOFFER HEART INSTITUTE, P.A. |
| Farmingdale, NY 11735 | 21550 BISCAYNE BLVD STE 133, AVENTURA, FL 33180 |
| Equipment Supplier: CynoSure | Equipment Location: |
| 5 Carlisle Rd., Westford, MA 01886 | 21550 BISCAYNE BLVD STE 133, AVENTURA, FL 33180 |

Financed Equipment Description: Icon Workstation

The Collateral as generally described above and herein which Creditor and Debtor agree that a more detailed description of said Collateral being financed shall be maintained by us among our books and records in whatever more detailed description of the Collateral being financed is received from the supplier of such Collateral and, absent manifest error, such detailed description shall be considered incorporated into this EFA and shall be provided to Debtor within a reasonable time upon request.

| Advanced Payment (if any): $ | 99.00 | | |
|---|---|---|---|
| Documentation Fee (if any): $ | 350.00 | Monthly Installment Payment: 6 PAYMENTS @ $99.00; FOLLOWED BY 60 PAYMENTS @ $3,515.59 | Term: 66 (Mos.) |

**Agreement.** Creditor agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral. You authorize us to pay the supplier(s) for the Collateral. You authorize us to commence this EFA. You authorize us to insert or correct information in this EFA, including your proper legal name, address, serial numbers and any other information describing the Collateral. You acknowledge that the payment obligations hereunder have commenced notwithstanding that the Collateral may not been delivered, installed or accepted by you. Amounts received by us under this EFA shall be applied as we determine. Debtor promises to pay Creditor the Payments set forth above. Upon execution of this EFA, you will deliver to us the Advance Payment as set forth above, which you agree is non-refundable. To the extent permitted by law, we may charge you a fee not to exceed $350, plus any applicable sales/use tax, to cover documentation and credit investigation costs. Payments may be adjusted upward or downward no more than fifteen percent (15%) to reflect actual cost. The first Payment is due at the commencement of Creditor's applicable billing cycle as specified by the Creditor; each subsequent Payment is due on the same date of each preceding month until all Payments have been received by Creditor. Each date a Payment is due is a "Due Date" and along with the Payment due on the first Due Date, Debtor agrees to pay us a prorated payment for an amount equal to 1/30th of the Payment amount for each day calculated from the date Creditor paid the vendor until the first Due Date (the "Prorated Payment"). The Prorated Payment shall be due upon execution of this EFA. Any amount not paid when due is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law. You acknowledge and agree that you shall bear sole responsibility for and shall have no claim against and Lender shall have no liability in the event the Collateral is: (a) not delivered; (b) damaged during transit (c) not properly installed or functioning upon installation; (d) defective or otherwise fails to perform in accordance with Supplier's specifications; or (e) otherwise unacceptable to you for any other reason.

**Information; Credit Reports.** YOU AUTHORIZE US AND OUR ASSIGNEES TO OBTAIN CREDIT REPORTS AND MAKE CREDIT INQUIRIES AS WE DEEM NECESSARY. We will inform you upon request if we have sought a consumer credit report and the name and address of any credit reporting agency that provided a report. You agree that we may request and use additional credit reports to update our information without further notice to you as long as you have obligations under this Agreement. Upon our request, you agree to provide us with statements setting forth your financial condition and operations. You warrant that all information you have and will deliver to us, including the information in this Agreement, is true, accurate and correct and you acknowledge that we are relying on such information to enter into this Agreement.

**Grant of Security Interest.** You hereby grant us a perfected, first priority security interest in the Collateral, all accession and additions thereto, replacements or substitutions thereof, and all proceeds to secure all of your obligations under this EFA.

**Disclaimer of Warranties and Claims.** We make no representation or warranty to any matter whatsoever including the merchantability or fitness for particular purpose of the Collateral. This EFA is irrevocable. Your obligation to pay all amounts hereunder is non-cancellable, absolute, and unconditional and will not be subject to any reduction, setoff, defense, counterclaim, abatement or recoupment for any reason, even if the Collateral is damaged, destroyed or defective. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent, nor are we their agent. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this EFA. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder. You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change the location of the Collateral without our prior consent and allow us to inspect it upon our request. At your expense, you will maintain the Collateral in good operating condition and repair. You will keep the Collateral free and clear of all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction to the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term, discounted at the lower of 3% or the then current discount rate of the Federal Reserve Bank of New York as calculated by us.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this EFA and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf. If we pay any of the above for you, you agree to reimburse us and pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code (UCC) or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You also acknowledge that in addition to the other obligations due under this EFA, we may assess and you may be required to pay additional taxes and/or fees including an invoice fee. Such fees may not only cover our costs, they may also include a profit.

**Insurance.** You agree to obtain and maintain at your expense property insurance for the full replacement value of the Equipment, protecting the Equipment against Loss, and liability insurance, in an amount acceptable to us, but in no event less than $500,000 covering any injury, death or third-party property damage arising out of or relating to use of the Equipment. If the Equipment must be titled under title registration laws ("Mobile") then you shall obtain and maintain all risk physical damage insurance. All insurance policies

must provide that no cancellation shall be effective without thirty (30) days' prior written notice to us. At our request, you agree to name any party who may have a security interest in the Equipment as Lender's Loss Payee. You agree to provide proof of insurance to us upon request. You hereby grant us a limited power of attorney allowing us to make a claim for, receive payment on, and endorse or execute for our benefit any instrument representing proceeds from any policy issued on the Equipment. IF YOU FAIL TO PROVIDE PROOF OF INSURANCE ACCEPTABLE TO US, WE HAVE THE RIGHT BUT NOT THE OBLIGATION TO SECURE INSURANCE IN SUCH FORM AND AMOUNT AS WE DEEM NECESSARY AND YOU AGREE THAT IN ADDITION TO INSURANCE PREMIUMS WE MAY CHARGE YOU INTEREST AT 2% PER MONTH AND/OR AN ADMINISTRATIVE FEE WHICH MAY RESULT IN A PROFIT TO US. YOU UNDERSTAND THAT IF WE PROCURE INSURANCE YOU MAY PAY MORE THAN IF YOU HAD PROCURED INSURANCE AND THE INSURANCE MAY NOT NAME YOU AS AN INSURED AND MAY NOT FULLY PROTECT YOU IN THE EVENT OF A LOSS. YOU AGREE THAT DISPUTES REGARDING INSURANCE OR FEES CHARGED FOR PROCURING INSURANCE WILL BE DETERMINED BY ARBITRATION CONDUCTED IN NASSAU COUNTY, NEW YORK UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION.

**Debtor Indemnification.** You hereby agree to defend, indemnify and hold us and our agents, successors, assignees and employees harmless from any and all liability, damage, penalty, claims, actions, expenses, disbursements or loss, including attorneys' fees and court costs, arising out of or relating to this EFA, liabilities you have assumed hereunder, and the purchase, sale, financing, ownership, selection, installation, design, licensing, possession, operation, control, use, maintenance, servicing, repair, storage, shipment, transportation or delivery of the Collateral. The indemnities contained herein shall survive the expiration or other termination of this EFA.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this EFA when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this EFA; (iv) a writ or order of attachment or execution or other legal process is levied on or charged against the Collateral which is not released or satisfied within 10 days; or (v) any of the above events of default occur with respect to any guarantor. Upon your default, we may do any of the following: (a) terminate this EFA; (b) foreclose on our security interest and require you to immediately turn over the Collateral to us, or we may peaceably repossess the same without liability for trespass, and upon receipt of the Collateral, sell the Collateral at terms we determine at one or more private sales, and apply the net proceeds (after deducting any related expenses) to your payment obligations, and you will remain liable for any deficiency with any excess being retained by us; (c) declare all sums due and to become due hereunder immediately due and payable, all future Payments discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights (including our attorneys' fees) and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This EFA shall be governed and construed under the laws of the State of New York (NY), without reference to its principle of conflicts of laws and is deemed to have been performed in Nassau County, NY. You submit to the jurisdiction of NY and agree that the state and federal courts sitting in Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce this EFA or any action or proceeding arising under this EFA. You acknowledge the jurisdiction may change at the sole discretion of MMP Capital's successors and/or assigns. You waive any objection based upon improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the UCC as we deem necessary. In addition to any late charges described herein, you agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this EFA, or permit the Collateral to be used by anyone but you. We may assign this EFA, in whole or in part, without notice to you or your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. This EFA sets forth the entire understanding of the parties with respect to its subject matter and may only be amended in writing signed by both parties, except as otherwise stated in the section above titled "Agreement." You represent and warrant to us that (i) this EFA constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms; (ii) you have the ability to perform all of your obligations under this EFA; and (iii) all information conveyed to us in connection with this EFA and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This EFA may be executed in separate counterparts, which together shall be the same instrument. You agree this EFA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. As long as you are not in default under this EFA, you may repay this EFA by paying an amount equal to the sum of any and all remaining Payments and any and all other fees currently due and payable. If Debtor constitutes more than one person, the liability of each shall be joint and several. A copy of this EFA (whether delivered by facsimile, in portable document format (PDF) or otherwise) shall be deemed an original for all purposes. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor or Creditor (as the case may be) at its address set for above, or such other address given to the sender by written notice. MMP Capital Inc is a registered New York corporation. Each party waives any right to a jury trial.

11/9/2021 12:45:41 PM PST (GMT-8) FROM: 7867473184 TO: 16175887244          Page: 22 of 28

# EXHIBIT C



# BROKER INVOICE

**REMIT TO:**
MMP CAPITAL INC
19 ENGINEERS LN
FARMINGDALE NY 11735
(516) 454-4570

**INVOICE #** 201911.13004
**DATE:** 1/21/2020

**SOLD TO:**
MMP Capital
19 ENGINEERS LN
FARMINGDALE, New York 11735

| ITEM | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| Commission | SOFFER HEART INSTITUTE, P.A. | $14,920.23 |

| | |
|---|---|
| SUBTOTAL | $14,920.23 |
| TAX RATE | |
| SALES TAX | |
| SHIPPING & HANDLING | |
| less: PAYMENTS RECEIVED | |
| **TOTAL** | $14,920.23 |

**ACH Wire Instructions**
ABA: 226070306
Account #: 10000142427

Make all checks payable to MMP Capital Inc.

THANK YOU FOR YOUR BUSINESS!

# EXHIBIT D

**Dr. Ariel Soffer**

| Compounding Period: | Monthly |
| Nominal Annual Rate: | 8.750% |

## Cash Flow Data - Loans and Payments

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 01/22/2020 | 150,077.64 | 1 | | |
| 2 | Loan | 01/22/2020 | 14,920.23 | 1 | | |
| 3 | Payment | 02/15/2020 | 99.00 | 5 | Monthly | 06/15/2020 |
| 4 | Payment | 07/15/2020 | 3,515.59 | 60 | Monthly | 06/15/2025 |

## TValue Amortization Schedule - Normal, 360 Day Year

| | Date | Loan | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| Loan | 01/22/2020 | 150,077.64 | | | | |
| Loan | 01/22/2020 | 14,920.23 | | | | 150,077.64 |
| 1 | 02/15/2020 | | 99.00 | 962.49 | -863.49 | 164,997.87 |
| 2 | 03/15/2020 | | 99.00 | 1,209.41 | -1,110.41 | 165,861.36 |
| 3 | 04/15/2020 | | 99.00 | 1,217.50 | -1,118.50 | 166,971.77 |
| 4 | 05/15/2020 | | 99.00 | 1,225.66 | -1,126.66 | 168,090.27 |
| 5 | 06/15/2020 | | 99.00 | 1,233.87 | -1,134.87 | 169,216.93 |
| 6 | 07/15/2020 | | 3,515.59 | 1,242.15 | 2,273.44 | 170,351.80 |
| 7 | 08/15/2020 | | 3,515.59 | 1,225.57 | 2,290.02 | 168,078.36 |
| 8 | 09/15/2020 | | 3,515.59 | 1,208.87 | 2,306.72 | 165,788.34 |
| 9 | 10/15/2020 | | 3,515.59 | 1,192.05 | 2,323.54 | 163,481.62 |
| 10 | 11/15/2020 | | 3,515.59 | 1,175.11 | 2,340.48 | 161,158.08 |
| 11 | 12/15/2020 | | 3,515.59 | 1,158.05 | 2,357.54 | 158,817.60 |
| **2020 Totals** | | **164,997.87** | **21,588.54** | **13,050.73** | **8,537.81** | 156,460.06 |
| 12 | 01/15/2021 | | 3,515.59 | 1,140.85 | 2,374.74 | 154,085.32 |
| 13 | 02/15/2021 | | 3,515.59 | 1,123.54 | 2,392.05 | 151,693.27 |
| 14 | 03/15/2021 | | 3,515.59 | 1,106.10 | 2,409.49 | 149,283.78 |
| 15 | 04/15/2021 | | 3,515.59 | 1,088.53 | 2,427.06 | 146,856.72 |
| 16 | 05/15/2021 | | 3,515.59 | 1,070.83 | 2,444.76 | 144,411.96 |
| 17 | 06/15/2021 | | 3,515.59 | 1,053.00 | 2,462.59 | 141,949.37 |
| 18 | 07/15/2021 | | 3,515.59 | 1,035.05 | 2,480.54 | 139,468.83 |
| 19 | 08/15/2021 | | 3,515.59 | 1,016.96 | 2,498.63 | 136,970.20 |
| 20 | 09/15/2021 | | 3,515.59 | 998.74 | 2,516.85 | 134,453.35 |
| 21 | 10/15/2021 | | 3,515.59 | 980.39 | 2,535.20 | 131,918.15 |
| 22 | 11/15/2021 | | 3,515.59 | 961.90 | 2,553.69 | 129,364.46 |
| 23 | 12/15/2021 | | 3,515.59 | 943.28 | 2,572.31 | 126,792.15 |

Dr. Ariel Soffer

|    | Date | Loan | Payment | Interest | Principal | Balance |
|----|------|------|---------|----------|-----------|---------|
| **2021 Totals** | | 0.00 | 42,187.08 | 12,519.17 | 29,667.91 | |
| 24 | 01/15/2022 | | 3,515.59 | 924.53 | 2,591.06 | 124,201.09 |
| 25 | 02/15/2022 | | 3,515.59 | 905.63 | 2,609.96 | 121,591.13 |
| 26 | 03/15/2022 | | 3,515.59 | 886.60 | 2,628.99 | 118,962.14 |
| 27 | 04/15/2022 | | 3,515.59 | 867.43 | 2,648.16 | 116,313.98 |
| 28 | 05/15/2022 | | 3,515.59 | 848.12 | 2,667.47 | 113,646.51 |
| 29 | 06/15/2022 | | 3,515.59 | 828.67 | 2,686.92 | 110,959.59 |
| 30 | 07/15/2022 | | 3,515.59 | 809.08 | 2,706.51 | 108,253.08 |
| 31 | 08/15/2022 | | 3,515.59 | 789.35 | 2,726.24 | 105,526.84 |
| 32 | 09/15/2022 | | 3,515.59 | 769.47 | 2,746.12 | 102,780.72 |
| 33 | 10/15/2022 | | 3,515.59 | 749.44 | 2,766.15 | 100,014.57 |
| 34 | 11/15/2022 | | 3,515.59 | 729.27 | 2,786.32 | 97,228.25 |
| 35 | 12/15/2022 | | 3,515.59 | 708.96 | 2,806.63 | 94,421.62 |
| **2022 Totals** | | 0.00 | 42,187.08 | 9,816.55 | 32,370.53 | |
| 36 | 01/15/2023 | | 3,515.59 | 688.49 | 2,827.10 | 91,594.52 |
| 37 | 02/15/2023 | | 3,515.59 | 667.88 | 2,847.71 | 88,746.81 |
| 38 | 03/15/2023 | | 3,515.59 | 647.11 | 2,868.48 | 85,878.33 |
| 39 | 04/15/2023 | | 3,515.59 | 626.20 | 2,889.39 | 82,988.94 |
| 40 | 05/15/2023 | | 3,515.59 | 605.13 | 2,910.46 | 80,078.48 |
| 41 | 06/15/2023 | | 3,515.59 | 583.91 | 2,931.68 | 77,146.80 |
| 42 | 07/15/2023 | | 3,515.59 | 562.53 | 2,953.06 | 74,193.74 |
| 43 | 08/15/2023 | | 3,515.59 | 541.00 | 2,974.59 | 71,219.15 |
| 44 | 09/15/2023 | | 3,515.59 | 519.31 | 2,996.28 | 68,222.87 |
| 45 | 10/15/2023 | | 3,515.59 | 497.46 | 3,018.13 | 65,204.74 |
| 46 | 11/15/2023 | | 3,515.59 | 475.45 | 3,040.14 | 62,164.60 |
| 47 | 12/15/2023 | | 3,515.59 | 453.28 | 3,062.31 | 59,102.29 |
| **2023 Totals** | | 0.00 | 42,187.08 | 6,867.75 | 35,319.33 | |
| 48 | 01/15/2024 | | 3,515.59 | 430.95 | 3,084.64 | 56,017.65 |
| 49 | 02/15/2024 | | 3,515.59 | 408.46 | 3,107.13 | 52,910.52 |
| 50 | 03/15/2024 | | 3,515.59 | 385.81 | 3,129.78 | 49,780.74 |
| 51 | 04/15/2024 | | 3,515.59 | 362.98 | 3,152.61 | 46,628.13 |
| 52 | 05/15/2024 | | 3,515.59 | 340.00 | 3,175.59 | 43,452.54 |
| 53 | 06/15/2024 | | 3,515.59 | 316.84 | 3,198.75 | 40,253.79 |
| 54 | 07/15/2024 | | 3,515.59 | 293.52 | 3,222.07 | 37,031.72 |
| 55 | 08/15/2024 | | 3,515.59 | 270.02 | 3,245.57 | 33,786.15 |
| 56 | 09/15/2024 | | 3,515.59 | 246.36 | 3,269.23 | 30,516.92 |
| 57 | 10/15/2024 | | 3,515.59 | 222.52 | 3,293.07 | 27,223.85 |
| 58 | 11/15/2024 | | 3,515.59 | 198.51 | 3,317.08 | 23,906.77 |
| 59 | 12/15/2024 | | 3,515.59 | 174.32 | 3,341.27 | 20,565.50 |
| **2024 Totals** | | 0.00 | 42,187.08 | 3,650.29 | 38,536.79 | |
| 60 | 01/15/2025 | | 3,515.59 | 149.96 | 3,365.63 | 17,199.87 |

Dr. Ariel Soffer

| | Date | Loan | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|---|
| 61 | 02/15/2025 | | 3,515.59 | 125.42 | 3,390.17 | 13,809.70 |
| 62 | 03/15/2025 | | 3,515.59 | 100.70 | 3,414.89 | 10,394.81 |
| 63 | 04/15/2025 | | 3,515.59 | 75.80 | 3,439.79 | 6,955.02 |
| 64 | 05/15/2025 | | 3,515.59 | 50.71 | 3,464.88 | 3,490.14 |
| 65 | 06/15/2025 | | 3,515.59 | 25.45 | 3,490.14 | 0.00 |
| 2025 Totals | | 0.00 | 21,093.54 | 528.04 | 20,565.50 | |
| Grand Totals | | 164,997.87 | 211,430.40 | 46,432.53 | 164,997.87 | |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 8.750% | $46,432.53 | $164,997.87 | $211,430.40 |

Filing # 137401826 E-Filed 10/27/2021 03:52:33 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION
CASE NO.: 2021-023915-CA-01

SOFFER HEART INSTITUTE, P.A., a Florida
corporation,

      Plaintiff,

v.

CYNOSURE, INC., a Delaware
corporation,

      Defendant.

_____/

## NOTICE OF CONFIDENTIAL INFORMATION WITHIN COURT FILING

Pursuant to Rule 2.420(d)(2) of the Florida Rules of Judicial Administration, Plaintiff, Soffer Heart Institute, P.A., notifies this Court and all interested Parties that, on October 27, 2021, it filed its Amended Complaint ("Amended Complaint"). Plaintiff further notifies this Court and all interested Parties that the Amended Complaint contains confidential information. The confidential information is located at:

1. Pdf page 15 which is located within Exhibit B to the Amended Complaint; and

2. Pdf page 17 which is located within Exhibit C to the Amended Complaint.

Dated: October 27, 2021

**GPG Law**
1326 SE 3rd Avenue
Ft. Lauderdale, FL. 33316
Telephone: (954) 533-5530
Facsimile: (954) 374-6588
Primary:    gpgservice@gpglawfirm.com
Secondary:  chris@gpglawfirm.com;
              alan@gpglawfirm.com

s/*Alan G. Geffin*
Alan G. Geffin
Florida Bar No. 780006
Christopher Perez-Gurri
Florida Bar No. 31405

One Boston Place
Suite 2600
Boston, MA 02108
Tel: (617) 723-7440
Fax: (617) 723-8849



ENGLANDER & CHICOINE, P.C.



| To: | Middlesex County Sheriff, | From: | Rachel King, Paralegal |
|---|---|---|---|
| | Civil Process Division | | |
| Fax: | 617-868-7244 | Pages: | 2 (including cover) |
| Phone: | | Date: | 11/09/2021 |
| Re: | CATIC Trac Mann | CC: | |
| | Steven G. Mann et al v. Prime | | |
| | Mortgage | | |
| | Docket No.: 21 MISC 000500 | | |

☐ Urgent　　☐ For Review　　☐ Please Comment　　☐ Please Reply　　☐ Please Recycle

● Comments:

Dear Sir or Madam,

I am writing to request a status on service regarding Aris Pappas, President of Prime Mortgage, Defendant in this matter. The Summons and Complaint was forwarded to your office on 10/13/2021, and we have a status conference upcoming. Kindly forward an update.

Thank you for your attention to this matter. Please do not hesitate to contact me with any questions regarding this request.

Sincerely,

Rachel R. King, Paralegal

CONFIDENTIALITY NOTICE

The documents accompanying this facsimile transmission contain confidential information. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this transmission is prohibited.

IF YOU HAVE ANY PROBLEMS RECEIVING THIS FAX,

PLEASE CALL: 617-723-7440

# ENGLANDER & CHICOINE, P.C.
## One Boston Place, 26 Floor
## Boston, MA 02108
## Tele: (617) 723-7440

Melissa Dobstaff
mdobstaff@ec-attorneys.com

October 13, 2021

**VIA FIRST CLASS MAIL**
Middlesex County Sheriff
Civil Process Division
300 Mystic Avenue
Medford, MA 02155

*RE:*    *Steven G. Mann & Glenna C. Mann v. Prime Mortgage Financial, Inc.*
**Civil Action No. *21 MISC 000500***

Dear Sir or Madam:

Enclosed, please find the following:

1. Summons;
2. Complaint.

Pursuant to G.L. c. 156D, s. 15.10, please serve the Defendant upon the following:

**Prime Mortgage Financial, Inc.**
**c/o Aris Pappas, President, Treasurer, Secretary and Director**
**82 Bridle Path**
**Sudbury, MA 01776**

Please send your return to this office. Along with a statement of the costs for your services. Thank you for your attention to these matters.

Very truly yours,

Melissa Dobstaff

Enclosures (**2**)

The attached case was e-filed so there are no original documents. Please contact Roxana Bithman at 305-305-9872 to process credit card payment.